1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                              EASTERN DISTRICT OF CALIFORNIA

8

9   RODNEY BERRYMAN, Sr.,                    )       Case No. 1:95-cv-05309-AWI
                                             )
10                      Petitioner,          )       DEATH PENALTY CASE
                                             )
11   vs.                                     )       ORDER RE: PETITIONER'S REQUEST FOR A
                                             )       LIMITED EVIDENTIARY HEARING
12   ROBERT L. AYERS, Jr., as Warden of      )
     San Quentin State Prison,               )
13                                           )
                        Respondent           )
14   _____)

15          This matter is before the Court on the request of Petitioner Rodney Berryman, Sr. ("Berryman")

16   for an evidentiary hearing on Claim 18 of the Petition, alleging that trial counsel, Charles Soria, was

17   asleep during a substantial portion of the penalty phase proceedings of the trial.  Specifically, Berryman

18   seeks to elicit testimony from Juror David Armendariz to substantiate the claim that Mr. Soria slept

19   during the penalty phase and also from Mr. Soria to establish he (Mr. Soria) was actively involved in

20   the preparation and conduct of the penalty phase proceedings.  Respondent Robert L. Ayers, Jr. as

21   Warden of San Quentin State Prison (the "Warden") opposes the request.

22   **I.      Background.**

23          On July 10, 2007, the Court issued an order permitting Petitioner Rodney Berryman, Sr.

24   ("Berryman") to engage in further evidentiary development of Claim 18, that trial counsel Charles Soria

25   slept during substantial portions of the trial.  The offer of proof supporting Claim 18 was a declaration

26   over the signature of Juror David Armendariz, executed February 4, 2001 and filed with the Court on

27   October 10, 2001.  In its entirety, as related to Claim 18, Mr. Armendariz averred:

28

1
2
3
4

> While I served on the Berryman jury, it seemed to me that attorneys Soria and [George] Peterson didn't appear to be in sync with each other. In addition, I noticed that Soria has a tendency to not off at times. His arm resting on the table occasionally slid off. It didn't happen all the time, usually when the Deputy DA was talking. I don't believe this fact had an impact on the jury's deliberations or their confidence in what Soria told us, but we all noticed it.

5    Armendariz Decl., ¶ 3.

6    The controlling authority on the issue of a sleeping attorney is *Javor v. United States*, 724 F.2d

7    831, 833 (9th Cir. 1984), which holds that "when an attorney for a criminal defendant sleeps through

8    a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of

9    prejudice is necessary." Although the Court was not convinced from reviewing the record that Mr. Soria

10   actually did sleep for "a substantial portion of the trial," further development was permitted with

11   inquiries on the subject to be directed to actual jurors, the trial judge, the trial prosecutor, any reliable

12   spectators, and any other trial participants. The Court left open the possibility that the presence of Mr.

13   Soria's co-counsel, George Peterson, may have undermined the existence inherent prejudice discussed

14   in the *Javor* holding, since *Javor* involved only one counsel for the defendant whereas Berryman had

15   two attorneys.

16   **II.      Summary of the *Javor* Case.**

17   Eddie G. Javor was one of three defendants charged and convicted of possession and sale of

18   heroin. His conviction was entered in 1965. He commenced habeas proceedings in 1971, and again in

19   1975, after he completed his prison term, claiming his conviction violated his constitutional rights

20   because he was deprived of effective counsel. 724 F.2d at 832. The case eventually was referred to a

21   magistrate judge in 1980 for a determination as to whether the trial attorney slept during the trial

22   proceedings. *Id*. Although the magistrate judge found that Javor's trial attorney had slept during a

23   "substantial portion" of the trial, including during the presentation of prosecution evidence against Javor,

24   the magistrate judge nonetheless recommended denial of the claim because Javor failed to establish

25   prejudice. *Id*. at 833. After a round of appeals and remand for further findings on the issue of prejudice,

26   the magistrate scrutinized the trial record and found that Javor's trial attorney "made appropriate motions

27   and objections, gave vigorous and legally adequate argument in support thereof, and was frequently

28   successful in convincing the court, and that he presented a vigorous and effective examination and cross-

examination of witnesses and presented as adequate a defense as the facts appear to have permitted."
*Id* . Summarizing the magistrate judge's original report, the Ninth Circuit recited that "Javor's [trial] attorney was asleep during a substantial portion of Javor's trial, that he failed to participate when evidence against Javor was being heard, and that the judge was at times concerned about his inattentiveness." The magistrate judge's second report, nonetheless found the attorney's representation efforts were adequate and did not prejudice Javor. This conclusion, however, "was based on a review of the record which lacked any indication of when Javor's attorney was alert and when he was asleep." *Id*. This led the court to the holding that once a petitioner establishes that trial counsel slept during a "substantial portion" of the trial no separate showing of prejudice is necessary. *Id*. In Javor's case, the Ninth Circuit found that prejudice was inherent, "considering the ongoing consultation ordinarily required in the course of a criminal trial." *Id*. at 834. The harm to a defendant "lies "in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made." *Id*. (internal quotations and citations omitted).

**III.    Informal Discovery Undertaken by the Parties Concerning Mr. Soria's Somnolence.**

Pursuant to Court authorization in the July 10, 2007 order, the parties, jointly, have conducted informal discovery on the issue of whether Mr. Soria, slept during a substantial portion of the trial. The result of these informal discovery/ investigative efforts were presented to the Court in a Joint Status Report filed on April 7, 2008. The parties jointly interviewed jurors Marilyn Newbles, Mary Moon, Steven Greenwood, Gene Bibb, and David Armendariz. Jurors Newbles, Moon, Greenwood, and Bibb were interviewed by telephonic conference call on January 25, 2008. A fifth former juror, Michael Carr, failed to answer his telephone on that day, although the interview was pre-arranged.[1] Juror Armendariz was interviewed separately by telephonic conference call on February 21, 2008. Next, Berryman's habeas co-counsel, Jesse Morris, Jr., obtained a supplemental declaration from Mr. Soria, which Mr. Soria executed on February 16, 2008. Efforts to contact former Deputy District Attorney (now retired Judge) Romero Moench were unsuccessful. The presiding trial judge, Judge Arthur Wallace, consented to be interviewed on March 6, 2008. One of the two court reporters, Minnal Hummel, consented to be

---

[1] Neither party has indicated whether Mr. Carr was re-contacted.

interviewed by Deputy Attorney General Brian Means.  The other court reporter, the bailiff, and the court clerk were not located.  No testimony from Mr. Peterson has been developed or presented, because Berryman's litigation team was not successful in getting him to return calls.[2]

**A.      Statement of David Armendariz.**

The April 7, 2008 Joint Status Report provides:

> Mr. Armendariz reiterated that he observed Soria with his hand on his chin, and his arm would slip off the table.  This happened several times.  His eyes were not fully shut, but not fully open.  When asked whether he could be certain whether Soria was asleep, Mr. Armendariz responded, "no."  Mr. Armendariz was not certain what parts of the trial this occurred in, but be associated at least one occurrence with the penalty phase of the trial. He remembers that the subject was discussed with other jurors.

**B.      Statements of Marilyn Newbles, Mary Moon, Steven Greenwood, and Gene Bibb.**

The April 7, 2008 Joint Status Report provides: "None of these persons remember seeing anyone sleeping or nodding off during trial."

**C.      Statement of Judge Wallace.**

The April 7, 2008 Joint Status Report provides: "Asked if he observed Mr. Soria or any other attorney sleeping or nodding off, Judge Wallace stated that he 'certainly didn't notice that.'  Had he noticed it, he would have called the attorney's attention to such conduct, and made sure he was awake."

**D.      Statement of Minnal Hummel.**

The April 7, 2008 Joint Status Report provides: "This court reporter stated that she did not see anyone asleep during the trial, including defense counsel.  She commented, however, that she would not necessarily have seen anyone sleeping since she frequently looks down when she is reporting."

**E.      Supplemental Declaration of Charles Soria.**

Mr. Soria's February 16, 2008 declaration avers that he was appointed as lead counsel in Berryman's case on September 11, 1987, and that on April 6, 1988, George Peterson was appointed as co-counsel.  He avers that he and Mr. Peterson "divided tasks for the trial," with Mr. Soria taking

---

[2] Berryman's lead counsel, Charles Bonneau, stated on the record before Court at a telephonic status conference hearing on April 30, 2008 that he did not have subpoena power to compel Mr. Peterson.  This is incorrect, and the Court has since told him so in two orders, one on May 2, 2008 and one on May 21, 2008, amending the May 2, 2008 order.  The July 10, 2007 order granting further evidentiary development authorized both parties leave to conduct discovery under Rule 6 of the Rules Governing § 2254 Cases.

1  "responsibility for the guilt phase of the trial," and if that phase resulted in a guilty verdict with special

2  circumstances, "attorney Peterson would then proceed with presentation of the penalty phase."

3      Regarding the allegation of his somnolence, Mr. Soria avers: "I deny falling asleep."  To bolster

4  his position he states: "I was fully engaged in the trial proceedings, particularly the guilt phase."  He

5  explains that during the penalty phase: "Peterson was the active participant, and I adopted the passive

6  role of second chair during his presentation."  He explains, "[t]here were no assigned tasks for me during

7  the penalty phase presentation, [as] George Peterson handled that portion."  Because he was angry with

8  the jury members after the guilt proceedings resulted in a guilty verdict, Mr. Soria states he avoided eye

9  contact with the jurors, but the "change in eye contact and [his] change in activity was not inattention

10  during the trial."

11      Although Mr. Soria was tired during the penalty phase trial, he "never fell asleep," and any

12  allegation that his headed nodded as it rested on his hand "would have been nothing more than a flicker

13  of fatigue with instantaneous alertness."  Continuing, he avers, "Any momentary head nod during the

14  penalty phase would have been so fleeting it never approached inattention or sleep. [He] did not fall

15  asleep during the trial in spite of any observed fatigue."  He feels that his presence really was

16  unnecessary at the penalty phase proceedings and that reading the daily transcripts would have sufficed,

17  but he was present and ready to assist as necessary.  He concludes: "The fact of my inactivity is not

18  inattention on my part.  I was attentive."

19  **IV.**    **Berryman's Request for an Evidentiary Hearing.**

20      Although Berryman moves for an evidentiary hearing at which both Mr. Soria and Mr.

21  Armendariz would be called to testify, he only provides an offer of proof relative to Mr. Soria's active

22  participation in the penalty phase proceedings of the trial.  Without analysis, he also claims issue of

23  whether Mr. Peterson's participation at the penalty phase proceedings eviscerates the "inherent

24  prejudice" described in the *Javor* case is a question of first impression.

25      Berryman purports to be able to establish that contrary to Mr. Soria's February 16, 2008

26  declaration testimony that he was essentially irrelevant to the penalty phase proceedings, in fact he was

27  personally responsible for much of the penalty phase presentation.  Because the initial criminal

28  complaint filed against Berryman included a torture-murder death eligible allegation, Mr. Soria was on

notice that the death penalty was a possibility.[3]  By the time of Berryman's March 1, 1988 arraignment, Mr. Soria knew this was a death penalty case, and he was the only attorney representing Berryman until April 6, 1988 (when Mr. Peterson was appointed).

Berryman points out that Mr. Peterson's involvement was not limited to the penalty phase. During guilt phase proceedings, as he was responsible for preparing jury instruction.  Mr. Soria's involvement also was not limited to guilt phase preparation.  Mr. Soria actually interviewed Berryman's now deceased, elderly great grandmother as a penalty phase witness.  Mr. Soria also executed a declaration dated October 1991 (and submitted to the California Supreme Court with state habeas proceedings), in which he averred personal responsibility for preparation of expert trial witnesses, Samuel G. Benson, M.D. (psychiatrist) and William Pierce, Ph.D. (psychologist), both of whom testified at penalty proceedings.  Further evidence of Mr. Soria's involvement in the penalty phase proceedings is supported by the June 26, 2008 declaration of trial investigator assistant Ed Beadle, attached to the present request for an evidentiary hearing.[4]  Mr. Beadle avers:

> I think Mr. Peterson was supposed to be responsible for planning for the penalty phase. It was his part of the case, but from what I remember both Mr. Peterson and Mr. Soria were pretty much involved. . . . [¶] For the most part, Mr. Soria was doing most of the direction because we were gearing up for the trial phase.  Mr. Peterson didn't really say a lot, but he did review reports, and he did like what I discovered for him. [¶]  From what I saw, Mr. Soria had more input and gave me more direction and developed strategy for the penalty phase more [sic] than Mr. Peterson.  Mr. Peterson was not involved quite as much as Mr. Soria.  [¶] Mr. Peterson was pretty up on the penalty phase information. He kind of had a different slant than Mr. Soria.  I think it possible that Mr. Soria would have been effective in helping Mr. Peterson if Mr. Soria was alert.  I think he would have picked up on things Mr. Peterson wasn't cognizant of or didn't catch.  He might also have come up with tactics, a line of questions Mr. Peterson didn't think of.  Mr. Soria was as well versed as Mr. Peterson with the penalty phase and could have completed the penalty phase at trial if Mr. Peterson could not have finished it.

In addition, Berryman claims Mr. Soria *should* have given "a guiding hand with respect to evidence which he was responsible for preparing."  This includes taking a more active role in the

---

[3] The torture-murder allegation was dropped before Berryman's arraignment.

[4] In his briefs supporting the Petition and the October 10, 2001 motion for evidentiary hearing, Berryman refers to Mr. Beadle and his co-worker, Douglas Lemmons, as unlicensed, untrained, unskilled, and unsupervised independent investigative contractors of retained defense investigator Bruce Binns.

1    presentation of evidence, especially the examination of Drs. Benson and Pierce, objecting to misconduct

2    by the prosecutor, and delivering the closing summation to the jury.

3    **V.    The Warden's Response.**

4          The Warden argues Mr. Soria's involvement in developing and presenting evidence at the penalty

5    phase proceedings is irrelevant because Berryman's offer of proof does not establish that Mr. Soria was

6    asleep at all, let alone during a substantial portion of the trial (or a substantial portion of the penalty

7    phase trial). Under the Warden's understanding of the interviews and declarations assembled prior to

8    the parties' filing of their April 7, 2008 Joint Status Report, the investigation only further undermined

9    Berryman's claim that Mr. Soria slept. Mr. Armendariz, who originally averred in a 2001 declaration

10   that he had observed Mr. Soria sleeping, now states that he doesn't know whether Mr. Soria was or was

11   not asleep. Expanding on the summary of the interview with Mr. Armendariz, the Warden states: "In

12   fact, Armendariz admitted that the manner in which Soria reacted immediately after his arm slipped off

13   the table suggested to him that Soria had not started to nod off."[5] Next the Warden reiterates that none

14   of the other trial participant individuals interviewed saw Mr. Soria sleeping. Lastly, he emphasizes that

15   Mr. Soria adamantly denied he slept during the trial.

16         The Warden asserts there would be no point in questioning Messrs. Soria and Armendariz, live,

17   about Mr. Soria's somnolence at an evidentiary hearing because the offers of proof do not support

18   Berryman's position. The Warden further argues (in the last paragraph of the brief) that Mr. Soria's

19   shared responsibility during (or active participation in) the penalty phase proceedings "is besides the

20   point," because his somnolence is the foundational issue and it cannot be established based on the offers

21   of proof.

22   **VI.    Discussion.**

23         The Court is not persuaded by the offered evidence that Berryman can establish Mr. Soria

24   actively participated in the actual penalty phase proceedings (as opposed to pre-penalty phase

25   investigation). More than arguing what Mr. Soria's responsibilities were, Berryman is arguing what Mr.

26

27         [5] The Court was not provided a recording or transcript of a recording of the Armendariz
     interview. It is therefore impossible to confirm whether the Warden's interpretation of Mr.
     Armendariz's statements is reasonable. The Joint Status Report does not invariably point to the
28   interpretation now advanced by the Warden in his opposition brief.

Soria *should* have done to have been *more* actively involved in the penalty phase proceedings.  Contrary to Berryman's suggestion, it would have been totally inappropriate if Mr. Peterson was handling the examination or cross examination of witnesses, for Mr. Soria to have interjected questions or objections. At most, his place would have been to confer with Mr. Peterson and possibly with Berryman as well. The request to elicit live testimony from Mr. Soria is denied.

Notwithstanding the Court's view about Mr. Soria's participation in the penalty phase proceedings, uncertainty about what Mr. Armendariz observed remains.  All that is before the Court is a summary of his interview, plus an additional sentiment attributed to him in the Warden's opposition brief.  If the interview with Mr. Armendariz was recorded, the recording should be transcribed and presented to the Court.  If the interview was not recorded, the parties should either re-interview him, with the means to reproduce his statements in Court, or Berryman's attorneys should depose him.[6]  In addition, Berryman must, once and for all, inform the Court if there are any other witnesses competent to testify about Mr. Soria's alleged somnolence and whether the subpoena power previously conferred will be utilized to compel the testimony of these witnesses.  The request to elicit live testimony from Mr. Armendariz at an evidentiary hearing is denied.

Berryman is directed to file a response to this order, explaining whether a transcript of the interview with Mr. Armendariz will be filed with the Court, or whether the parties agree to re-interview him, or whether Berryman's attorneys will take his deposition.  The response shall further inform the Court about the existence of any additional witnesses and the manner in which their testimony, if any will be presented.  The response shall be (electronically) filed no later than Friday, August 22, 2008 by 4:00 p.m.


IT IS SO ORDERED.

DATE:    August 15, 2008

                                                            /s/ Anthony W. Ishii
                                                        Anthony W. Ishii
                                                  United States District Judge

---

[6] If the parties choose to depose Mr. Armendariz, Berryman's attorneys will need to request an amendment to the Phase IV-B budget and case management plan for time and expenses.