IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY BERRYMAN, Sr., <br><br> Petitioner, <br><br> vs. <br><br> ROBERT K. WONG, as Acting Warden of San Quentin State Prison, <br><br> Respondent | Case No. 1:95-cv-05309-AWI <br><br> <u>DEATH</u> <u>PENALTY</u> <u>CASE</u> <br><br> ORDER DENYING CLAIM 18; DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND GRANTING CERTIFICATE OF APPEALABILITY |

This matter is before the Court following further evidentiary development and briefing by the parties concerning the merits of Claim 18. Having considered all the evidence presented by Petitioner Rodney Berryman, Sr. ("Berryman") in support of Claim 18 as well as the parties' respective points and authorities in support of and in opposition to Claim 18, the Court denies relief. With the resolution of Claim 18, there are no unresolved claims remaining in Berryman's First Amended Petition (the "Petition") (Doc. 147) and therefore the Court denies Berryman's petition for a Writ of Habeas Corpus. With the denial of the writ, the Court grants a certificate of appealability on Berryman's allegations that trial counsel provided constitutionally ineffective representation at penalty proceedings for failure to develop and present mitigating evidence, as alleged in Claim 65 of the Petition.

I.   **Background**

This case arises from Berryman's conviction and death sentence for the rape and murder of 17 year old Florence Hildreth. On July 10, 2007, the Court issued a 272-page Memorandum Order (Doc. 351) denying relief and Berryman's request for an evidentiary hearing on all claims and allegations with the exception of Claim 18, which alleged one of his two trial attorneys, Charles Soria, slept during

crucial portions of the trial.  The controlling authority on the issue of a sleeping attorney is *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984), which holds that "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary."  Although the Court was not convinced from reviewing the record and the supporting declaration of Juror David Armendariz that Mr. Soria actually did sleep for "a substantial portion of the trial," further development was authorized as to Mr. Soria's trial conduct, demeanor, and attentiveness, with permitted inquiries directed to actual jurors (in addition to Mr. Armendariz), the trial judge, the trial prosecutor, any reliable spectators, and any other trial participants.  Doc. 351: 272.  The Court left open the possibility that the presence of Mr. Soria's co-counsel, George Peterson, may have undermined the existence of inherent prejudice discussed in the *Javor* holding, since *Javor* involved only one counsel for the defendant whereas Berryman had two attorneys.  No further evidentiary development was authorized on this collateral inquiry.

Thereafter, the parties conducted informal discovery on the issue of whether Mr. Soria slept during a substantial portion of the trial.  The result of these informal discovery and investigative efforts were presented to the Court in a Joint Status Report filed April 7, 2008 (Doc. 364).  The parties interviewed jurors Marilyn Newbles, Mary Moon, Steven Greenwood, Gene Bibb, and David Armendariz.  Jurors Newbles, Moon, Greenwood, and Bibb were interviewed by telephonic conference call on January 25, 2008.  A fifth former juror, Michael Carr, failed to answer his telephone on that day, although the interview was pre-arranged.[1]  Attempts to locate and contact other jurors (not including Mr. Armendariz) were unsuccessful.  Mr. Armendariz was interviewed separately by telephonic conference on February 21, 2008.  Berryman's federal habeas corpus co-counsel, Jessie Morris, Jr., obtained a supplemental declaration from Mr. Soria, which Mr. Soria executed on February 16, 2008.  Efforts to contact former Deputy District Attorney (now retired Judge) Romero Moench initially were unsuccessful, but the Warden was able to secure Judge Moench's declaration on September 25, 2008 and present it with his opposition points and authorities.  The presiding trial judge, Judge Arthur

---

[1] Neither party indicated whether Mr. Carr was re-contacted.

Wallace, consented to be interviewed on March 6, 2008. One of the court reporters,[2] Minnal Humman, consented to be interviewed by Deputy Attorney General Brian Means, counsel of record for Respondent Robert K. Wong, as Acting Warden of San Quentin State Prison (the "Warden"). The other court reporter, the bailiff, and the court clerk were not located. No testimony from Mr. Peterson was developed from Mr. Peterson because Berryman's litigation team was not successful in getting him to return telephone calls.

Despite having been given permission to conduct discovery on the issue of Mr. Soria's somnolence pursuant to Rule 6 of the Rules Governing § 2254 Cases in the July 10, 2007 Order, Berryman requested leave of the Court to conduct depositions on this subject as well as on the issue of the extent of Mr. Soria's participation during the penalty phase trial proceedings. Berryman proposed to depose Mr. Armendariz and Mr. Peterson on the subject of Mr. Soria's attentiveness. He proposed to depose Mr. Soria, trial investigator Ed Beadle, and Mr. Peterson on the extent of Mr. Soria's participation during Berryman's penalty phase proceedings. The Court denied leave for Berryman to explore the extent and scope of Mr. Soria's participation in the penalty phase trial proceedings through the testimony of Mr. Soria, Mr. Beadle, or Mr. Peterson, but reconfirmed Berryman's entitlement to depose Mr. Armendariz and Mr. Peterson on the issue of Mr.Soria's attentiveness or somnolence.

Depositions of Mr. Armendariz and Mr. Peterson were conducted on January 16, 2009 and January 22, 2009, respectively. Berryman filed his points and authorities in support of Claim 18 on April 1, 2009. The Warden's opposition and offer of Judge Moench's declaration were filed on April 15, 2009. Berryman's reply points and authorities were filed on May 12, 2009.

**II.   Summary of the Facts Relevant to Claim 18**

Claim 18 in the Petition alleges simply that Berryman's conviction, death eligibility, and death sentence are unlawful and unconstitutional because Mr. Soria was asleep during "crucial portions" of his trial. As a result, Berryman claims he was denied effective assistance of counsel, his right to confrontation and his right to cross-examination. Doc. 147: 33. The evidence pertaining to this claim

---

[2] It's not clear from the Joint Statement whether there were two or three court reporters; both numbers are given.

consists of statements elicited from Mr. Armendariz, other jurors, the trial judge, one of the two court reporters, Mr. Soria, Mr. Peterson, and the prosecutor, retired Judge Moench.

### A.      David Armendariz

Berryman's initial offer of proof supporting Claim 18 was a declaration signed by Mr. Armendariz and filed with the Court on October 10, 2001. Mr. Armendariz averred:

> . . . I noticed that Soria had a tendency to nod off at times. His arm resting on the table occasionally slid off. It didn't happen all the time, usually when the Deputy DA was talking. I don't believe this fact had an impact on the jury's deliberations or their confidence in what Soria told us, but we all noticed it.

Armendariz Decl., ¶ 3.

The April 7, 2008 Joint Status Report provides a summary of Mr. Armendariz's statements during his February 21, 2008 telephonic conference with the parties' attorneys:

> Mr. Armendariz reiterated that he observed Soria with his hand on his chin, and his arm would slip off the table. This happened several times. His eyes were not fully shut, but not fully open. When asked whether he could be certain whether Soria was asleep, Mr. Armendariz responded, "no." Mr. Armendariz was not certain what parts of the trial this occurred in, but he associated at least one occurrence with the penalty phase of the trial. He remembers that the subject was discussed with other jurors.

Doc. 364: 2

At his deposition, under questioning by Berryman's counsel, Mr. Armendariz admitted there could have been four to seven times he might have observed Mr. Soria with this head on his hand and possibly with his eyes closed. Mr. Soria's conduct was a topic of discussion among the jurors during breaks in the proceedings, but not during deliberations. Armendariz Depo: 10-11. Later, he said that the discussion with other jurors about Mr.Soria really consisted merely of passing comments to two female jurors. *Id*.: 36. Both of these jurors agreed with Mr. Armendariz that Mr. Soria appeared to have nodded off. *Id* at 37.

Mr. Armendariz could not remember whether Mr. Soria's somnolence occurred during the guilt phase or the penalty phase of the trial. *Id*.: 13. He clarified, however, that Mr. Soria did not appear to be in a state of somnolence for more than a "couple of seconds" at a time. Mr. Soria appeared fatigued or tired. *Id*.: 14. Later Mr. Armendariz testified: "It's my personal opinion that he [meaning Mr. Soria] at times was somewhat - - for some short periods of - - like he [Mr. Soria] said, a fleeting moment

1  inattentive, I would say." *Id*.: 17. In this passage, Mr. Armendariz was referring to Mr. Soria's
2  declaration (summarized below). Mr. Armendariz agreed with Berryman's counsel that Mr. Soria was
3  "at least a little inattentive," but could not say whether he was asleep or even if his eyes were closed for
4  more than a fleeting moment, if his eyes were closed at all. *Id*. He attributed the appearance of Mr.
5  Soria's eyes possibly being closed on his (Mr. Soria's) husky, chubby frame. *Id*. 24-25. On cross
6  examination, he clarified that when Mr. Soria leaned his chin on his had, it appeared his eyes were shut
7  for "a little nanosecond or whatever." *Id*.: 27.

8  During examination by the Warden's counsel, Mr. Armendariz testified he thought Mr. Soria's
9  head on the hand poses occurred three to five times rather than six to seven times. *Id*.: 22. Mr.
10 Armendariz's recollection of the length of the entire trial is inconsistent with the actual length of the
11 proceedings. Whereas Mr. Armendariz testified he thought the entire trial was conducted "within a
12 week," *id*.: 24, in fact, opening statements at the guilt phase commenced on September 26, 1988, a guilt
13 verdict was returned on October 18, 1988, the penalty phase evidence was given from October 24
14 through 27, 1988, and deliberations proceeded from October 27 through 28, 1988.

15 **B.     Other Jurors**

16 According to the April 7, 2008 Joint Status Report, none of the other jurors contacted and
17 telephonically interviewed, Marilyn Newbles, Mary Moon, Steven Greenwood, and Gene Bibb,
18 "remembered seeing anyone sleeping or nodding off during the trial." Doc. 364: 2.

19 **C.     The Trial Judge**

20 The parties reported in the Joint Status Report that the trial judge, the Honorable Arthur E.
21 Wallace, consented to an interview. "Ask if he observed Mr. Soria or any other attorney sleeping or
22 nodding off, Judge Wallace stated that he 'certainly didn't notice that.' Had he noticed it, he stated he
23 would have called the attorney's attention to such conduct, and made sure that he was awake." Doc.
24 364: 4.

25 **D.     One of the Trial Court Reporters**

26 The court reporter located spoke with the Warden's counsel. She reported "she did not see
27 anyone asleep during the trial, including defense counsel. She commented, however, that she would not
28

necessarily have seen anyone sleeping since she frequently looks down when she is reporting." Doc. 364: 4.

### E.   Romero Moench

Judge Moench averred in his declaration (attached to Doc. 405) he "did not observe Mr. Soria sleeping, or appearing to fall asleep, at any time during the penalty phase of trial." Moench Decl.: 2. He added that he was sitting in a position throughout the trial that had Mr. Soria fallen asleep, he would have been aware of that fact. *Id*.

### F.   Charles Soria

In Mr. Soria's declaration, appended to the Joint Status Report, he avers he was appointed as lead counsel in Berryman's case on September 11, 1987, and that on April 6, 1988, George Peterson was appointed as co-counsel. He avers that he and Mr. Peterson "divided tasks for the trial," with Mr. Soria taking "responsibility for the guilt phase of the trial," and if that phase resulted in a guilty verdict with special circumstances, "attorney Peterson would then proceed with presentation of the penalty phase." Regarding the allegation of his somnolence, Mr. Soria avers: "I deny falling asleep." To bolster his position he states: "I was fully engaged in the trial proceedings, particularly the guilt phase." Doc. 364: 5. He explains that during the penalty phase: "Peterson was the active participant, and I adopted the passive role of second chair during his presentation." He explains, "[t]here were no assigned tasks for me during the penalty phase presentation, [as] George Peterson handled that portion." Because he was angry with the jury members after the guilt proceedings resulted in a guilty verdict, Mr. Soria states he avoided eye contact with the jurors, but the "change in eye contact and [his] change in activity was not inattention during the trial." *Id*.: 7.

Although Mr. Soria was tired during the penalty phase trial, he "never fell asleep," and any allegation that his headed nodded as it rested on his hand "would have been nothing more than a flicker of fatigue with instantaneous alertness." Continuing, he avers, "Any momentary head nod during the penalty phase would have been so fleeting it never approached inattention or sleep. [He] did not fall asleep during the trial in spite of any observed fatigue." *Id*. He feels that his presence really was unnecessary at the penalty phase proceedings and that reading the daily transcripts would have sufficed,

but he was present and ready to assist as necessary. He concludes: "The fact of my inactivity is not inattention on my part. I was attentive." *Id*.: 8.

### G. George Peterson

Mr. Peterson testified that he may have seen Mr. Soria lean his chin on his hand during the trial, but he could not say how many times he observed this and he never observed that Mr. Soria's eyes were closed. Peterson Depo: 8. Later, he testified he could not honestly say whether Mr. Soria rested his head on his hand during the trial. *Id*.: 15. He was never aware Mr. Soria was asleep or might be asleep during the trial proceedings or that Mr. Soria's eyelids might be drooping. *Id*.: 16. He conceded, however, that Mr. Soria's "dozing," as described by Mr. Armendariz, could have occurred without his (Mr. Peterson's) awareness. *Id*.: 19. On cross examination, Mr. Peterson further clarified that he was under the impression Mr. Soria was attentive throughout the trial. The idea that Mr. Soria fell asleep or became inattentive during any portion of the trial is inconsistent with Mr. Peterson's observations of Mr. Soria's trial performance. *Id*.: 21.

In Berryman's case, Mr. Soria was lead counsel. Mr. Peterson was associated in as second counsel. *Id*.: 9, 17. Mr. Soria was involved in all the decision-making for the case from start to finish. *Id*.: 17. When Mr. Peterson was asked to come into a death penalty case as second counsel, he generally handled the penalty phase. *Id*.: 10. He believes this arrangement for dividing the labor is likely the way the Berryman case was handled. *Id*.: 10-11. Mr. Soria' custom for communicating with Mr. Peterson while Mr. Peterson was trying the case was to be very discreet, tapping Mr. Peterson on the arm and making suggestions or providing Mr. Peterson with various objects. Mr. Soria did not interrupt Mr. Peterson when Mr. Peterson was introducing exhibits or questioning witnesses. *Id*.: 12, 18.

## III. The Parties' Respective Arguments

The parties agree on neither the import of the foregoing evidence nor the application of controlling law.

### A. Berryman's Contentions

Berryman argues the foregoing evidence establishes that Mr. Soria did sleep during portions of the trial, based on his own admission in his declaration and in Mr. Armendariz's observation. The somnolence would have occurred during the penalty phase (while Mr. Peterson was trying the case) and

possibly also during the guilt phase while the prosecutor was engaged in cross examination (or talking). Berryman contends that the statements of other witnesses at the trial should be discounted because they were not actually looking at Mr. Soria. Since Mr. Soria appeared to Mr. Armendariz to be dozing off and Mr. Soria, himself, admitted that his conduct may have given the appearance he was sleeping, a dereliction of duty at a capital trial occurred. Berryman argues that an awake attorney does not appear to be dozing.

Berryman compares Mr. Soria's conduct with that of the defense lawyers in *Javor v. United States*, 724 F.2d 831 (9th Cir. 1984), *Tippins v. Walker*, 77 F.3d 682 (2d Cir. 1996), and *Burdine v. Johnson*, 262 F.3d 336 (5th Cir. 2001), where the lawyers were asleep or appeared to be asleep during portions of the trials. Because an attorney's somnolence essentially deprives a defendant of counsel guaranteed under the Sixth Amendment, the conduct amounts to structural error under *Arizona v. Fulminante*, 499 U.S. 379, 407 (1991), requiring no prejudice analysis. *Javor*, 724 F.2d at 834; *Tippins*, 77 F.3d at 686-86; *Burdine*, 262 F.3d at 349.

He argues that the duration of sleep in *Javor* was only momentary.

**B.     The Warden's Contentions**

In contrast, the Warden maintains there is no evidence that Mr. Soria fell asleep at Berryman's trial and that even if Mr. Soria was inattentive to the proceedings at times, Berryman was not prejudiced as a result. The Warden also urges the Court to reject Claim 18 because the California Supreme Court previously denied the same allegations on the merits and on procedural grounds and Berryman has not demonstrated that the state court adjudication was contrary to or an unreasonable application of clearly established United States Supreme Court precedent, 28 U.S.C. § 2254(d)(1). Finally, the Warden argues that because the Supreme Court has not "squarely addressed" whether presumed prejudice for one sleeping attorney in a case like *Javor* applies where the defendant is represented by two attorneys, relief is not available, citing *Knowles v. Mirayance*, ___ U.S. ___, 129 S.Ct. 1411 (2009)

**IV.    Analysis**

In a case such as this, where the evidence in support of the petitioner's claim was adduced during federal habeas corpus proceedings, AEDPA deference under 28 U.S.C. § 2254(d)(1) does not apply.

*Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002).[3] The only factual issue to be resolved is whether Mr. Soria was asleep "through a substantial portion of the trial." *Javor*, 724 F.3d at 833. If so, "such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary." *Id*. If not, Berryman's Claim 18 reverts to a standard ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and he must establish both deficient performance and prejudice. *Id*. at 687.

Berryman posits that because no one can be sure Mr. Soria actually was asleep during portions of the trial, since at the very least he gave the appearance of being asleep on three to five occasions, his case comes within the holding of *Javor*, prejudice is presumed and relief must be granted. This negative inference approach discards Berryman's burden of presenting evidence showing that Mr. Soria was asleep during a substantial portion of the trial. Whether Mr. Soria admits that his fatigued appearance could have given an onlooker the impression he was asleep is beside the point. He adamantly denied being asleep at all during the trial. Mr. Armendariz's observations of fleeting inattentiveness in Mr. Soria also do not come close to demonstrating somnolence during "a substantial portion of the trial" let alone any portion of the trial. Observing Mr. Soria's eyes partially closed three to five times during a trial that lasted from September 18 to October 28, 1988 does not meet the "substantial portion" threshold. Berryman has not met his burden. The presumed prejudice standard under *Javor*, does not apply;[4] Berryman must satisfy both the deficient performance and prejudice requirements of *Strickland*.

In the July 10, 2007 Order the Court previously chronicled omissions in the trial performance of Messrs. Soria and Peterson, but was not able find any of those omissions singularly or cumulatively prejudicial.

       1.    Failure of trial counsel to note guilt phase pre-instructions that the rape death eligibility special circumstances could be predicated on attempted *or* completed rape (Claims 19 and 52);

---

[3] The Warden acknowledges this controlling authority in his opposition brief and still presses his case for AEDPA deference.

[4] Because of this finding, the Court is not called upon to determine whether Mr. Peterson's presence and participation had an impact on the presumed prejudice standard.

2.  Failure of trial counsel to object to Mr. Moench's summation at the guilt and penalty phases that the pathologist opined Berryman stood on Ms. Hildreth's face for three to five minutes as she lay bleeding to death (when in fact the pathologist testified Ms. Hildreth's survival time after being stabbed was three to five minutes) (Claims 8, 29, 75);

3.  Failure of trial counsel to object to Mr. Moench's misstatement about the order of deliberations on degrees of murder during guilt phase summation (Claims 8, 37);

4.  Failure of trial counsel to object during penalty proceedings to testimony elicited from Berryman's older brother Ronald Berryman, Jr., and other character witnesses during Mr. Moench's cross examination about the facts leading to Berryman's prior felony conviction for transporting marijuana (i.e., that Ronald, Jr. and Berryman were selling marijuana to high school students) (Claims 8, 14);

5.  Failure of trial counsel to object to testimony of David Perez during penalty proceedings that while he was being assaulted by Berryman and others, someone yelled "L.A. Cryps"(Claims 8, 61);

6.  Failure of trial counsel to object to Mr. Moench's cross examination of Berryman's character witnesses during penalty proceedings that Berryman forced Ms. Hildreth to orally copulate him (Claims 8, 54);

7.  Failure of trial counsel to object to testimony about Berryman's extra-marital affairs during cross examination of Berryman's character witnesses (Claim 14);

8.  Failure of trial counsel to object to Mr. Moench's references to Charles Manson and Sirhan Sirhan during his cross examination of psychologist expert Dr. William Pierce (Claim 58);

9.  Failure of trial counsel to object to Mr. Moench's repeated reference to ascending and descending degrees of psychological impairment (suggesting that Berryman was not impaired) during penalty phase cross examination of Dr. Pierce (Claim 16);

10. Failure of trial counsel to object to Mr. Moench's penalty summation that Berryman's psychologist expert, Dr. William Pierce, opined that Berryman was amoral (when in fact Dr. Pierce testified Berryman had exhibited *asocial* behavior) (Claim 8);

11. Failure of trial counsel to object to Mr. Moench's penalty summation that Berryman's philandering was a factor in aggravation of his sentence (Claim 8).

12. Failure of trial counsel to object to Mr. Moench's penalty summation that Berryman struck Mr. Perez with a tire iron while others were holding him (when in fact there was no evidence any of Mr. Perez's attackers were holding him when Berryman struck him) (Claims 95, 96)

One additional missed objection to alleged prosecutorial misconduct mentioned in Claim 18 but not discussed in connection with other claims involved Mr. Moench's argument on penalty summation that Berryman obtained a gun after Ms. Hildreth's death was announced and intended to shoot up the house of a family friend (of Ms. Hildreth) to create a diversion. *See* July 10, 2007 order, Part III.B., pp. 29-30. The Court previously observed there was no evidence supporting Mr. Moench's statement in this regard. Although the argument grossly overstated the evidence (that Berryman had asked a friend for a gun, but didn't in fact obtain one), it was not the linchpin of the prosecution case and was mentioned only once. Far more emphasized by Mr. Moench and damaging to Berryman were the arguments documenting his escalating violence towards others and determination to get his way, even when confronted with Ms. Hildreth's ultimately ineffectual resistance to his sexual advances. None of the omissions potentially or actually attributable to Mr. Soria's appearance of sleepiness and admitted tiredness at the penalty phase, either singularly or cumulatively satisfy the prejudice prong of the *Strckland* analysis. Had Mr. Soria and Mr. Peterson made every objection Berryman argues they should have made the result of the trial proceedings, both at guilt and at penalty, would not have been different. Claim 18 is denied on the merits.

**V.  Certificate of Appealability**

Effective December 1, 2009, Rule 11(a) of the Rules Governing § 2254 Cases charge district courts with issuing or denying a certificate of appealability ("COA") when entering a final order adverse

to a petitioner for a writ of habeas corpus. The standard for granting a COA under 28 U.S.C. § 2253(c)(2) is a "substantial showing of the denial of a constitutional right." This, in turn, requires a "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Sassounian v. Roe*, 230 F.3d 1097, 1101 (9th Cir. 2000). Meeting this standard is not onerous. Rather, the standard "is relatively low." *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002); *Beardslee v. Brown*, 393 F.3d 899, 901-02 (9th Cir. 2004). For the Court to issue a COA, Berryman "need not show that he should prevail on the merits," *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983), but must meet the threshold requirement of showing that reasonable jurists could debate whether the claims should have been resolved differently or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

The Court has carefully reviewed the July 10, 2007 Order to determine which if any of Berryman's claims meet this standard. Except for Claim 65 alleging ineffective assistance of counsel failure to uncover evidence of Berryman's dysfunctional family history, Berryman has not met the "relatively low standard" for issuance of a COA. As advanced in these federal proceedings, Berryman claims extensive mental impairments and deficiencies. He is said to suffer from permanent pre-existing mental disorders, severe mental and emotional impairments, the pervasive effects of organic brain disease with resulting limited intellectual and cognitive capacity, overwhelming developmental trauma including neglect, abandonment, emotional abuse, sexual abuse, plus, from the death of his father, post-traumatic stress disorder, depression, paranoia, and substance abuse. The Court has accepted as true evidence that Berryman was born pre-maturely, the second child of teenage parents who were unprepared and unqualified for parenthood. The Court recognized that the instability of the parental relationship, the moving around, the joblessness of the father, the violence between the parents, and their ultimate separation would take a toll on the children. Berryman's father, in particular was a poor role model with his substance abuse and womanizing. The Court found that Berryman's poor academic achievements also must have had a role in his failures in the employment world as well as in his inter-personal relations. His past injuries, including from an industrial accident and the incident where his

wife struck him on the head with a metal flashlight also likely left him with residual headaches, perhaps coupled with his well-documented excessive drinking. The Court's impression of Berryman is that he was a young man with a poor social foundation who made bad choices and then made more bad choices escalating into violent outbursts occasioned by those choices, including the assault on motorist David Perez, punching his father-in-law in the nose, continued drinking, not getting help, not obtaining regular employment, trying to maintain multiple simultaneous intimate relationships, and running away from his problems. The Court considered proffered, contested evidence from both Berryman and the Warden that he (Berryman) suffered from a seizure disorder caused by either excessive alcohol consumption, his injuries (particularly his head injury), or both. However, the Court rejected the notion that Berryman suffered a seizure, or that a jury fully informed of all the evidence would have found he suffered a seizure at the time of his fatal sexual assault on Ms. Hildreth. The Court further rejected Berryman's allegation that the penalty case was "close." Neither the length of the deliberations nor any juror conduct supported this allegation. Finally, the Court rejected the contention that Berryman had been sexually abused by two of his mother's younger brothers when he (Berryman) was a child. The foundational evidence supporting this contention was derived from his mother's and sister's respective declarations. Berryman was said to have revealed the fact of this childhood molestation while he was in the Kern County Jail awaiting trial for the present offence. The declaration testimony of his mother and sister lacked reliability, corroboration, and first-hand personal knowledge. It also was based on unexcepted hearsay.

The COA as to Claim 65 is granted based on the Court's rejection of Berryman's alleged childhood molestation, which Berryman has alleged contributed to his compromised mental state the night he assaulted Ms. Hildreth. The Warden did not object to the sister's or mother's respective declarations and some members of the Ninth Circuit Court of Appeals believe "[t]here is something very wrong with the [district] court sua sponte – and selectively – raising an objection that both parties have bypassed." *Ayers v. Pinholster*, ___ F.3d ___, ___, n. 12, 2009 WL 4641748, *51, n. 12 (9th Cir. Dec. 9, 2009) (Kozinski, J., dissenting). The COA further is granted in light of 9th Circuit pronouncements that sentencers must not be precluded from considering, and district courts must not reject, mitigating evidence even though the crime is not attributable to that mitigating evidence. *Schad v. Ryan*, 581 F.3d

1019, 1036 (9th Cir. 2009);, *Lambright v. Schriro*, 490 F.3d 1103, 1114-16 (2007); *Hamilton v. Ayers*, 583 F.3d 1100, 1132 (2009); *but compare, Boyde v. California*, 494 U.S. 370, 382 (1990) ("Evidence regarding social background and mental health is significant, as there is a 'belief, long held by this society, that defendants who commit criminal acts that *are attributable* to a disadvantaged background or to emotional and mental problems, may be less culpable than defendants who have no such excuse'" (emphasis added)).

## VI.   Judgment

The Clerk is directed to enter judgment forthwith.


IT IS SO ORDERED.


DATE:   January 15, 2010

/s/ Anthony W. Ishii
Anthony W. Ishii
United States District Judge