# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

RODNEY BERRYMAN, SR.

               Petitioner,

    v.

KEVIN CHAPPELL, Warden of California
State Prison at San Quentin,*

             Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:95-cv-05309 AWI

CORRECTED ORDER  DENYING PRO SE
REQUEST FOR CERTIFICATE OF
APPEALABILITY

*Kevin Chappell, Warden of California State Prison at San Quentin, is substituted for his predecessor
San Quentin Wardens pursuant to Federal Rule of Civil Procedure 25(d).

This matter is before the Court on the pro se request for a certificate of appealability filed by Petitioner Rodney Berryman, Sr. ("Berryman").

## I.      Procedural History

Berryman was convicted of capital murder of 17 year old Florence Hildreth and sentenced to death on December 5, 1988.   The death eligibility special circumstance was rape.   His conviction and sentenced were affirmed by the California Supreme Court on December 27, 1993.   *People v. Berryman*, 6 Cal. 4th 1048 (1993).   On the same day, the state high court summarily denied Berryman's pending state petition for habeas corpus.

Berryman commenced federal proceedings with a request for appointment of counsel and stay of execution on April 27, 1995.   Once counsel were appointed, and a petition filed, the Court ordered Berryman to exhaust state remedies for certain claims.   Upon the completion of exhaustion, Berryman filed an amended petition on November 6, 1998, which became the operative petition (doc. 147).

On July 10, 2007, after considering the parties' respective briefs on the merits and Berryman's entitlement to further evidentiary development, the Court entered a comprehensive memorandum decision denying all but Claim 18 of the petition.   As to Claim 18, the Court ordered further evidentiary development (doc. 351).   The completion of further evidentiary development and argument of counsel culminated on January 15, 2010 with an order denying Berryman habeas corpus relief, granting a certificate of appealability as to Claim 65 (ineffective assistance of counsel at penalty phase proceedings), and directing the clerk to enter judgment (doc. 414).   Judgment was entered against Berryman the same day (doc. 415).

At the request of Berryman's attorneys, the January 15, 2010 order was modified, with no change in the outcome, on January 22, 2010 (doc. 418).   Berryman filed his notice of appeal on February 3, 2010 and new counsel were appointed for further proceedings before the Ninth Circuit on February 23, 2010 (doc. 425).   The matter remains pending before the Ninth Circuit with Appellant's Opening Brief currently scheduled to be filed by November 29, 2013.

## II.      Pro Se Submissions

Berryman began submitting pro se documents for filing with this Court on November 1, 2001 when he attempted file a request for release from prison on his own recognizance on the grounds that

1

he had filed a habeas corpus petition in state court the previous month.  The Court refused the filing because Berryman was represented by counsel.  Pro se submissions continued in February 2002, off and on, through July 2008.   In the meantime, the petition Berryman presented to the California Supreme Court (mentioned in his November 1, 2011 submission) was denied on May 1, 2002.  The state court found all claims in the petition procedurally barred for failure to raise the claims on direct appeal in the first instance and additionally for untimeliness.  Separately, the state court denied four of the five claims on the merits and one on the grounds it was not cognizable (because it involved a Fourth Amendment issue).

At various times during the pendency of Berryman's case, the Court has addressed his concerns about his appointed counsel and the legal claims he felt should have been, but were not, raised in his federal petition.  The theory of the case presented by his appointed attorneys was that the victim, Ms. Hildreth, had voluntary intercourse with Berryman prior to her death.  According to this version, the intercourse was followed by a verbal altercation which escalated into a violent confrontation and resulted in an unintentionally inflicted shallow stab wound to Ms. Hildreth's neck.  The argument proceeded that if Berryman's trial attorneys had adequately presented this theory, the jury would have acquitted him on the rape charge and returned a verdict of manslaughter on the homicide.

In contrast, the theory Berryman has advanced in his pro se submissions is that he did not commit any offense respecting the victim and that he was, in fact, not present at the scene of her death.  Rather, he claims his conviction followed the admission of circumstantial and planted evidence by the prosecution and Kern County authorities.  He has complained that none of his attorneys (state trial through federal habeas) subjected this planted evidence to appropriate testing.

Early on in the pro se submission process, the Court issued an order on September 26, 2002 in which it discussed Berryman's complaints about federal habeas counsel (doc. 317).  The Court agreed with assessment of his federally appointed counsel that evidence of malfeasance on the part of Kern County law enforcement officials in manipulating evidence could not be developed due to nonexistence.  The Court also found two other theories implausible.  The first was that impressions of the soles of his shoes were placed at the crime scene by authorities and the second was that a pubic hair consistent with Berryman said to have been found on the victim was planted.  Neither theory can

2

be sustained because crime scene photographs depicting the soles of his shoes were taken and the discovery of the pubic hair on the victim occurred prior to Berryman's arrest.  In Berryman's present certificate of appealability request he claims that the Court's prior findings on these issues were the result of having been misled by his appointed attorneys.  No evidence supports this assertion.

Another enduring theory of misconduct Berryman has advanced over the years concerns the discovery by authorities of broken gold-colored chain links on the floor of his pickup truck cab that were similar to a broken gold-colored chain link found near the victim.  He claims the discovery of these chain links constituted an unlawful search and seizure.  Without addressing the noncognizability of a Fourth Amendment claim on habeas corpus where the petitioner has not made a showing he or she was denied the opportunity to litigate the matter in state court, (*see Woolery v. Arave*, 8 F.3d 1325, 1327 (9th Cir. 1993)), the theory ignores key considerations.  When Berryman was arrested the night after the murder and his pickup truck was impounded, authorities acted appropriately in opening up the cab to look for his registration (despite the fact that a temporary registration was taped to his window).  Further, the next morning when the pickup truck was in the impound lot, authorities acted appropriately conducting an inventory search of the vehicle.  On either (or both) of those occasions, authorities could have noticed the gold-colored chain links.  This observation was sufficient to establish probable cause to obtain a search warrant (which was obtained subsequently).

The Court addressed Berryman's frequent pro se reiteration of this subject matter on February 24, 2005 (doc. 333).  Quoting extant Ninth Circuit authority, the Court explained its main concerns were for Berryman to be able to communicate with his appointed attorneys and that the strategies pursued by the attorneys were reasonable.  The Court found attorney-client communications to be adequate and the refusal of appointed counsel to advance the claims Berryman favored constituted a reasonable strategy.

With Berryman's pro se submissions and complaints about his appointed counsel continuing, the Court appointed provisional, independent counsel on September 25, 2008 to evaluate the matter and report back to the Court.  Independent counsel's report was filed under seal on April 17, 2009 and not served on any of the parties.  This report did not change the Court's previously expressed views.

3

### III.        Standard for Granting a Certificate of Appealability

A certificate of appealability may issue only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §  2254(C)(2).  In *Slack v. McDaniel*, 529 U.S. 473 (2000), the high Court clarified that a certificate of appealability may issue under circumstances where "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* 484.  As the following analysis shows, based on the merits of the arguments presently before the Court, Berryman has not made a showing of the denial of a constitutional right.  Nor could reasonable jurists debate whether his petition should have been granted or he deserved encouragement to proceed further.  For these reasons his request for a certificate of appealability, as to each claim and contention, is denied.

Berryman's request is subject to denial separately because most of the claims he raises never have been filed in this Court.  A few were raised in his November 6, 1998 petition (doc. 147), many were presented to the Court as complaints about what his appointed attorneys were not doing which he felt they should have been doing, and some appear to be new to the Court altogether.  The claims certainly never were presented in a single cohesive document upon which the Court passed definitive judgment.  Nonetheless, the Court is willing to tread through Berryman's request.  Berryman is admonished, however, that no further pro se filings will be accepted.

### IV.     Current Claims

Berryman presents his claims in two main categories.  He explains that the first category relates to his pro se state habeas corpus petition.  The second category recites claims cognizable from his many pro se submissions.

#### A.        Pro Se State Habeas Petition Claims

As organized in his request, there are eleven claims Berryman represents came from his pro se state habeas petition.  It is uncertain whether this is the state pro se petition the California Supreme Court denied on May 1, 2002, or a subsequent petition.

4

### 1.        Planted Gold Chain Links in Berryman's Pickup Truck

He first charges the prosecution presented false evidence that investigating officers observed gold-colored chain links on the floor of his pickup truck cab while they were processing his vehicle following his arrest.  This is a derivation of the illegal search and seizure of gold-colored chain links, and depends for its viability of proof that the deputy sheriff who testified about observing the chain links committed perjury. For the reasons recited above, respecting Berryman's Fourth Amendment claim, the Court rejects the notion that Kern County authorities committed perjury or in any way observed the chain links under inappropriate circumstances. The Court finds it plausible that investigating officers observed gold-colored chain links in Berryman's truck cab when they were processing his vehicle following his arrest either when they were looking for his registration or when they conducted an inventory search as part of the impound process.  The claim has no merit.

### 2.        Juror Bias

Next, he complains about the implied bias of two jurors, David Armendariz and Clara Connelly. While the jury partiality claim is known to the Court from reading Berryman's pro se submissions, this claim was not the focus of the Court's prior orders concerning his pro se filings.  At least with respect to Mr. Armendariz, this follows because a claim of juror bias was presented and litigated in Claim 24 Berryman's federal petition.  Since no basis for revisiting that analysis is offered, the ruling in the July 7, 2010 memorandum decision stands (doc. 351).  As to Ms. Connelly, the trial court dismissed her from further service upon defense motion.  The time line is that a prosecution witness testified on September 28, 1988 after which Ms. Connelly revealed she was acquainted with him, the defense moved to dismiss her on September 29, 1988, and she was dismissed on October 12, 1988.  Since she did not deliberate on any issue regarding Berryman's case, the claim of implied bias is unsubstantiated.  No violation of Berryman's constitutional rights is shown.

### 3.        Planted Limited Spare Tire Impressions

Berryman claims authorities placed impressions of a limited spare tire at the crime scene to connect him to the crime.  This issue was addressed by the Court in its discussion of Claims 32 and 33 in the July 10, 2007 memorandum decision (doc. 351).   Berryman's two main contentions are that the limited spare tire could not have been mounted on the right front wheel where crime scene

5

investigators said it was mounted, and, time wise, it would have been impossible for him to have picked up Ms. Hildreth at approximately 10:45 p.m. (when she was last seen alive), driven her to a secluded agricultural area, raped and murdered her, driven to another location to remove the limited spare including the rim, inflated the changed tire, cleaned up so no one would notice any dirt, and returned to his girlfriend's house at approximately 12:30 a.m. (the next morning).

The issue of the limited spare tire impressions, was addressed by the Court in the analysis of sufficiency of the evidence for the rape and murder.  In undertaking this task, the Court assessed the reasonableness of the California Supreme Court's decision that the evidence was sufficient as well as the trial court's findings in denying Berryman's motion under Penal Code § 1118.1 for acquittal due to insufficient evidence.  While the timeline for Berryman to have committed rape and murder, then remove and replace the limited spare tire within less than two hours would have been strained, the Court does not agree it would have been impossible.  Moreover, the limited spare was not the only tire match.  Both the prosecution and defense criminalists testified to a consistent pattern between the one of the rear tires (not the limited spare) and a crime scene impression.

The claim cannot be sustained in light of the totality of the evidence and under the standard for reviewing sufficiency of the evidence claims.  *See Jackson v. Virginia*, 433 U.S. 307, 319 (1979) (viewed in the light most favorable to the prosecution, the test is whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.)

### 4.    Misleading Diagram Shown to the Jurors

This claim relates to a diagram the prosecutor used to explain the crime scene to the jurors. The diagram was drawn by one of the Sheriff's Department technical investigators.  Berryman notes discrepancies in the depiction of tire tracks in relation to testimony of the ranch foreman who described his discovery of Ms. Hildreth's body and the presence of tire tracks near the body at that time.  Berryman also complains that no aerial photograph of the crime scene was taken until October 15, 1987 (over six weeks after the September 6, 1987 crime).  His point is that the inaccurate diagram was used by the prosecution to reinforce the reliability of evidence Berryman claims was planted.

The Court interprets this claim as one alleging improper prosecutorial conduct during the trial. The standard for evaluating prosecutorial misconduct during trial proceedings is whether the

6

prosecutor's conduct was so significant that it rendered the trial fundamentally unfair.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974).  To meet this standard, the conduct must have "so infected the trial process with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643, *quoted by Dardan v. Wainwright*, 477 U.S. 168, 181 (1986).

Since the diagram was not entered to evidence, even crediting Berryman's allegations that the diagram was inaccurate, the fact that an inaccurate diagram was shown to the jurors to help the prosecutor explain the many elements of circumstantial evidence did not render the trial fundamentally unfair.  No constitutional violation is shown.

### 5.   Planted Gold Chain Links at the Crime Scene

In addition to alleging that authorities illegally searched Berryman's pickup truck to observe gold-colored chain links, he also claims they planted a single gold chain link at the crime scene to connect him to the crime.  He maintains investigators' discovery of the chain link in the dirt is implausible because if he had struggled with Ms. Hildreth, there would have been more than a single loose chain link at the scene.

As noted above, the evidence presented at trial was that three broken gold-colored chain links were found on the floor inside the cab of Berryman's pick up together with two broken gold chain link necklaces hanging over the rear view mirror.

Berryman's argument is unpersuasive.  First, it is not necessarily impossible that only one chain link would have been found.  It could have come from one of the two broken necklaces that were hanging on the rear view mirror.  If there had been a struggle and the necklace around Berryman's neck broke, but he retrieved the broken necklace before departing from the crime scene, a single chain link could have been left behind.  Alternatively, it may be that Berryman is correct and there were more chain links to be found at the crime scene.  Under that rendition of the facts, it's possible that any additional links remaining at the crime scene simply were not found by investigating officers.  The claim is without merit.

### 6.   Planted Shoe Print Impression at the Crime Scene

Berryman's primary observation about the shoe print evidence is that it was too perfect to have been caused by a man struggling with a woman during a rape.  He concludes, therefore, that it must

7

have been manually manipulated.  Second, one of the technical investigators testified he observed a shoe print near the victim's right elbow, yet the impression cannot be seen in an overall photograph of the area.

Berryman's contention about the print being too perfect to have occurred during a struggle is speculation.  Separately or cumulatively, the allegations do not amount to misconduct.  That an impression of an athletic shoe in dry dirt could not be seen in an "overall photograph of the area" establishes only that the impression was not discernible in the overall photograph, not that it didn't exist.  The claim does not make out a constitutional violation.

### 7.    Presence of the Victim's Blood on Berryman's Shoe

The prosecution presented evidence at trial that blood not inconsistent with that of Ms. Hildreth was found on a shoelace from Berryman's right Brooks-brand athletic shoe.  In contrast, Berryman reports that at the preliminary examination hearing, an investigating officer testified the only place he observed blood was on the inseam of Berryman's right shoe during his interrogation.  Berryman notes, however, that the investigating officer would not have been able to observe Berryman's shoes during the interrogation because they were sitting at a table and Berryman's feet (with his shoes on) were *under* the table.

Separately, Berryman argues there are two different pairs of shoes involved; one with and one without a red bar toward the back ankle of the shoe.  He claims this contention is supported by photographs depicting the two different pairs of shoes.  In addition the prosecution criminalist testified at trial that Berryman's shoes were relatively new, whereas the shoes depicted in the photographic exhibit attached to Berryman's pro se petition depict a worn pair of shoes.  Berryman also questions the chain of custody of the shoes since there are some discrepancies in dates the shoes were delivered, received, and checked out for testing.  A final element to the argument is that one trial witness who saw Berryman the night Ms. Hildreth was killed testified Berryman wasn't wearing his Brooks athletic shoes that night; he was wearing Eagle-brand athletic shoes.  The conclusion Berryman draws from the foregoing is that there was no blood on his Brooks-brand athletic shoe at the time of his arrest, but rather the blood evidence was planted.

Berryman's reference to a photograph attached to his state habeas petition as substantiation for his claim that the prosecution utilized two pairs of shoes to incriminate him is not helpful. The evidence is not before this Court and the contention therefore is unsubstantiated.

Separately, the Court is puzzled by the amount of effort Berryman has exerted to discredit the blood observed on the inseam (or insole) of his right shoe. Testing conducted on this blood revealed that it was consistent with both Berryman's and Ms. Hildreth's blood. Only the blood taken from the shoelace had any inculpatory value for the prosecution. The serologist testified that the shoelace sample was inconsistent with Berryman's blood, but consistent with Ms. Hildreth's blood.

Finally, the fact that one of the interrogating officers testified at the preliminary examination hearing he observed blood on the inseam or Berryman's right shoe does not establish that blood could not have been or was not observable on the shoelace of the same shoe. Even if the Court had access to the preliminary examination transcript (which it does not), no conclusions would be drawn by resort to negative implication about the presence of blood elsewhere on the shoe. The claim is without merit.

### 8.    Origin of the Scratch on Berryman's Face

Berryman claims trial testimony of three trial witnesses exculpates him from the crime because the witnesses confirmed that a scratch observed under his eye did not come into being until Berryman engaged in a game of basketball, the day after Ms. Hildreth's death. His position is that the scratch was inflicted by his girlfriend's young cousin. He claims the absence of the scratch until the basketball game shows he had not been in a violent struggle with Ms. Hildreth before her death. He further emphasizes that the prosecution introduced no evidence of skin tissue or residue under victim's fingernails (as his trial attorneys did at trial). What Berryman does not mention, however, is that there also was evidence before the jury that the youngster who Berryman claims inflicted the scratch testified he had observed the scratch prior to the basketball game, earlier in the day.

All of this evidence was before the jury at Berryman's trial and in spite of it, the jury made it's finding he was guilty of raping and murdering Ms. Hildreth. The Court cannot say that simply because three witnesses testified they had not seen or noticed the scratch prior to the basketball game and one said he did, that the single witness was not credible. And even if the jury believed the scratch

did originate at the basketball game, the finding of Berryman's guilt of rape and murder was supported by evidence completely apart from the scratch.  The claim is without merit.

### 9.      False Fingerprint Evidence

Berryman disputes the trial prosecution theory placing Ms. Hildreth in his pickup truck because a single thumbprint matching her thumb was found on the inside of the passenger window.  Berryman argues that if there had been a struggle, Ms. Hildreth's fingerprints would have been on the exterior of his truck and that more than a single thumb print would have been discovered.  He also points out that other witnesses have given statements to the effect that Ms. Hildreth had been in Berryman's truck on previous occasions.

All of these factors, especially the fact that no other prints belonging Ms. Hildreth were found in his pickup truck, lead Berryman to the conclusion that the single thumbprint was manufactured.  Separately, he contends that the print alleged to be Ms. Hildreth's actually was his print.  And finally, he claims the technician who lifted the print from the truck window was not qualified as an expert witness (due to insufficient training).

These facts and contentions do not establish a constitutional violation.  First, Berryman places too much emphasis on the fact that authorities recovered only one of Ms. Hildreth's prints.   The inability of authorities to lift multiple prints consistent with Ms. Hildreth's hands does not mean her prints were not in and on other parts of the vehicle.  It simply means that the thumb print lifted was the only usable print lifted.  Second, the corollary to this argument, that the thumb print lifted was actually a print of his (Berryman's) thumb, is unsubstantiated and unsupported.  Third, Berryman's complaint that the technical investigator who lifted and testified about the fingerprints was unqualified similarly is unsubstantiated.

The overarching concern, however, is that Berryman's allegations are in internally conflicted as to whether he contends Ms. Hildreth was or was not in his pickup truck.  In past pro submissions, Berryman argued Ms. Hildreth had never been in his pickup.  In the current papers, he seems more open to that possibility.  Yet, if he concedes she had been in his pickup on prior occasions, the fact that her thumb print was found on the inside of the passenger window would not be probative of his guilt

or innocence.  It would be a neutral fact.  The claim does not rise to the level of a constitutional violation.

### 10.    Failure to Preserve Tires for Defense Examination

This claim is based on *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984).  Berryman complains that his defense criminalist was denied the opportunity to examine the tires which the prosecution relied on to place him at the scene of the crime.  He contends this missed opportunity came about because Kern County authorities released five of the seven tires associated with his pickup truck to the finance company which sought to repossess the vehicle.  At trial, the defense criminalist testified about comparisons of two tires based solely on photographs reviewing "tire rolls" created by the prosecution criminalist with photographs of the tire impressions at the crime scene.

A key set of facts Berryman does not include in his papers concerns the characterization of the tires the prosecution preserved.  The prosecution criminalist found only two tires connected with Berryman's pickup truck that matched tire track impressions observed at the crime scene.  Those were the limited spare (which was not mounted on Berryman's pickup truck at the time of his arrest) and one of the rear tires.  Both of those tires were marked as trial exhibits, and available for examination, but the defense criminalist did not examine them.

In *Arizona v. Youngblood*, the Court held that the failure of police to preserve potentially useful evidence was not a denial of due process of law absent a showing of bad faith on the part of the police.  488 U.S. at 58.  *Trombetta* held that the due process clause does not require law enforcement agencies to preserve breath samples of suspected drunk drivers in order for results of breath-analysis tests to be admissible in criminal prosecutions.  467 U.S. at 491.  Rather, the duty imposed by the Constitution on state agencies to preserve evidence is limited to evidence that might be expected to play a significant role in the suspect's defense.  *Id*. at 488.  This means the evidence must be both exculpatory and unavailable to the defense except through the state agency.  *Id*. at 489.

Neither requirement for finding a due process violation is present in this case.  Because the prosecution preserved the two tires which were relevant to the case, there can be no bad faith for releasing the other five to the finance company.  Those five tires did not incriminate Berryman so

11

examining them could not have produced exculpatory evidence.  Finally, both of the relevant tires were available for examination by the defense criminalist.  The claim is without merit.

### 11.     *Napue* Claim

Berryman claims the prosecutor knowingly presented false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).  The examples given reference previous claims: the investigating officer's testimony about observing blood on Berryman's shoes as well as lying in the affidavit supporting the search warrant request regarding his observation of gold-colored chain links on the floorboard of Berryman's truck.  The Court, however, does not find any of the testimony to be false. The claim is unsubstantiated.

### B.     Misconduct Claims

Berryman asserts that his misconduct claims presented to the Court in his numerous pro se submissions support his pro se state habeas claims.  He complains that his appointed counsel (before this Court and/or before the Ninth Circuit) agreed to and then reneged on their agreement to present the various planted evidence and misconduct claims he has alleged in his pro se submissions.  He states that the supporting evidence, including a recording of telephone conversations between his appointed counsel and him, has been filed, apparently multiple times, as exhibits to motions on the Ninth Circuit docket, numbers 21, 28, and 40.  His frustration stems from the fact that the claims his attorneys initially agreed were cognizable were never included in the federal petition filed in and decided by this Court or in argument before the Ninth Circuit.

### 1.     *Brady* Claim Withholding Round Gold Chain Link Photographed at the Crime Scene

Berryman claims a photograph of the chain link found at the crime scene shows that it was round, described by the technical investigator as a small round jewelry clasp.  In contrast, the links found on the floor of the pickup truck and on the broken chains draped over the rear view mirror were horseshoe shaped.  His contention about the shape of the link found at the crime scene is further based on the photograph of the crime scene link, trial exhibit 34 (showing a round link).  The constitutional violation alleged is in the prosecutor's substituting a horseshoe shaped link for the round link when the links were admitted into evidence.

12

The holding of *Brady v. Maryland*, 373 U.S. 83 (1963), which applies to this and the next 17 claims is simply: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. This concept was expanded later to include the withholding of material evidence whether or not it was requested by the defense. *United States v. Agurs*, 427 U.S. 97 (1976); *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995).

As to the present claim, the material requirement is understood to be that a horseshoe shaped chain link argued by the prosecutor to place Berryman at the crime scene in fact wasn't found at the crime scene, but was planted in the place of a round link or clasp.

There is support for Berryman's argument that trial exhibit 34 depicts a small round jewelry clasp rather than a horseshoe shaped link. The California Supreme Court specifically mentioned the presence of Berryman's "jewelry clasp" found at the crime scene. 6 Cal. 4th at 1083. While this Court no longer is in possession of the state record (the state record followed Berryman's appeal to the Ninth Circuit), based on the state court observation of a jewelry clasp at the crime scene, Berryman's contention that the link found at the crime scene was, in fact round, is credible. The jury also had the opportunity to view trial exhibit 34 and would have been able to see in the photograph the shape of the link. But the presence of a round clasp at the crime scene that had similarities to the broken chain links and necklaces found in Berryman's pickup truck would be just as inculpatory as the presence of a horseshoe shaped link, and under *Brady*, if the evidence had no exculpatory value, it could not have been material to the defense. The claim is without merit.

> **2.** ***Brady* Claim -- Withholding the Fact There Were Two Pairs of Brooks Athletic Shoes Involved in this Case**

The actual shoes represented to be Berryman's shoes were marked as Exhibits 57 and 58. A separate exhibit, Exhibit 68, was said to be a photograph of Berryman's right shoe. When comparing the right shoe (Exhibit 58) with the photograph of the right shoe (Exhibit 68), Berryman points out that the "fake" blood is visible on Exhibit 58, but not discernible on Exhibit 68.

Berryman also discussed photographs of two left shoes, one of them having a design defect (with the 'R' and 'S' of "Brooks" upside down). It was the left shoe, with the design defect, that was said

by the prosecution to have made distinctive impressions at the crime scene.  It was the other left shoe, the one was marked Exhibit 57 that was passed around to the jurors.

There is no way for the Court to assess the validity of Berryman's assertions, since the state record is with the Ninth Circuit.  In the absence of substantiation, Berryman has not made a showing of the denial of a constitutional right.

### 3.   *Brady* Claim – Withholding Fingerprint Comparison Report

Berryman claims that the testimony of the prosecution technical investigator about thumbprint evidence was false.  This follows, he alleges, because no report authored by this investigator was offered into evidence.

This claim fails under *Brady* because there is no indication that the investigator's report would have been exculpatory.  In the face of credible witness testimony, the necessity for a report also has not been established.  Moreover, the claimed violation could not have been material to Berryman's defense, since he also claims that Ms. Hildreth *had* been in his pickup truck on other occasions.  The claim cannot be sustained.

### 4.   *Brady* Claim – Withholding of a Second Roll of Film Showing the Crime Scene

Based on the colloquy between the prosecutor and defense counsel during a discussion with the trial court about the admissibility of photographs, plus the statements of one of the technical investigators (charged with the task of photographing the crime scene), Berryman maintains there was a second roll of film that was not turned over to the defense.  He does not argue photographs developed from that film would have been exculpating.

It is not clear how the fact of a second roll of film, with unknown images, would be material or exculpatory to Berryman's defense.  This claim fails under *Brady* for lack of substantiation.

### 5.   *Brady* Claim – Withholding Personnel Records of Prosecution Witnesses

Berryman faults the prosecution for not turning over personnel records of the two technical investigators involved in his case for impeachment purposes.  Berryman points out that neither of these two witnesses worked for the Kern County Sheriff's Department at the time of their testimony (although they were involved in processing the crime scene).  He feels that information about how

14

they lost their respective jobs *could have been* helpful to impeach their testimony.  He likens his case to the situation in *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013).

In *Milke*, the petitioner had specifically requested (by subpoena), personnel files of her arresting officer. With the subpoena quashed and her death sentence entered, the petitioner then proceeded to state post-conviction proceedings, where, in addition to claiming the state court's refusal to allow her access to the officer's personnel was a *Brady* violation, she argued her confrontation rights were impaired as well.  To support the notion that the officer likely had committed misconduct in her own case, the petitioner attached documents establishing he had committed misconduct in four prior cases. *Id*. at 1004.

Berryman's case does not even approach the facts in the *Milke* case.  His claim of prior misconduct by the technical investigator witnesses relates only to his own case, which the Court has rejected. Further, the impeachment value of the sought after personnel records is speculative at best.  There is no showing that either witness was terminated from employment, and Berryman offer no reason for their separation from the Kern County Sheriff's Department.  Evidence that merely *could have* been useful as impeachment does not satisfy the *Brady* materiality standard.  The claim is without merit.

**6.    *Brady* Claim -- Withholding Fact that the Victim had been in Berryman's Pickup Truck on Prior Occasions**

Berryman complains that the prosecutor informed the jurors Ms. Hildreth's family members reported she never had been in Berryman's truck, when in fact, two of her family members informed the prosecutor's investigator she had been in his truck prior to her death.  This latter information was developed in 2001 when Berryman's federal habeas counsel interviewed two of Ms. Hildreth's family members.

This claim was raised in Berryman's federal petition as Claim 71A regarding the sufficiency of the rape charge.  As Berryman notes, the Court found the withheld information to be unhelpful to Berryman's defense.  The fact that Ms. Hildreth previously had been in Berryman's truck in no way suggests that she consented to sexual intercourse.  Accordingly, the failure of law enforcement or the prosecutor to have disclosed this information is not actionable under *Brady*.  The information was not exculpatory.  No constitutional violation is presented.

15

**7.**     ***Brady* Claim – Withholding Existence of Felony Record of a Prosecution Witness**

The witness whose felony record allegedly was withheld is Thellas Sanders.  Berryman describes Mr. Sanders as a key prosecution witness in two particulars.  First Mr. Sanders testified Berryman asked Mr. Sanders if he (Berryman) could get a gun (to go after the people responsible for Ms. Hildreth's death).  Second, Mr. Sanders testified that during that conversation, Berryman disclosed that Ms. Hildreth had died by having been stabbed, *before* police authorities had disclosed this information.  Berryman characterizes Mr. Sanders' testimony as false.

The misconduct arises because Mr. Sanders apparently pleaded guilty to a felony assault on March 8, 1988, a little more than six months prior to his testimony at Berryman's trial on September 26, 1988.  Berryman claims the prosecutor knew that Mr. Sanders had been released from custody a few months before the trial.  The prosecutor also allowed Mr. Sanders to lie on the witness stand when he said he had only one prior felony conviction, for auto theft. Berryman argues that if the fact of Mr. Sanders' prior felony assault conviction had been disclosed that information could have been used to impeach his credibility on cross examination.

No substantiation for these allegations is offered.  However, even if Mr. Sanders did have a recent felony assault conviction that was undisclosed, Mr. Sanders can hardly be characterized as a key prosecution witness.  While his testimony that Berryman knew the instrumentality that caused Ms. Hildreth's death (a knife) before authorities published information was incriminating, the more crucial evidence was the circumstantial physical evidence that tied Berryman to the crime scene.  The withheld information, alone, would not have been material to Berryman's defense.  No constitutional violation is substantiated.

**8.**     ***Brady* Claim – Withholding Existence of Felony Arrest of the Victim**

Berryman raises a new (to the Court) fact he claims would have made a difference in the outcome of his trial, that is, Ms. Hildreth previously had been arrested for using a knife on an ex-lover.  Berryman believes that with this information before the jury, the jury may have been convinced that the murder weapon was a knife Ms. Hildreth brought with her to the crime scene.

The Court does not doubt this fact would have been both material to the defense at trial and even federal habeas under the theory of voluntary sexual intercourse followed by a fatal altercation.  It has

16

little impact, however, on Berryman's pro se position that he was not at the crime scene and had no contact with Ms. Hildreth the night of her death.   Separately, there is the problem of lack of substantiation.   None is offered.   The claim fails because Ms. Hildreth's alleged prior assault on an ex-lover and possible propensity to carry a knife is irrelevant to Berryman's claim that he was not at the crime scene and had nothing to do with Ms. Hildreth's death.   Alternatively, the claim fails for lack of substantiation.   No constitutional violation is shown.

**9.      Due Process Violation Due to Destruction of Evidence**

This claim repeats the facts, cause, and harm resulting from the failure of the prosecution criminalist to remove tires from the bed of Berryman's pickup truck and preserve them before the truck was turned over to the finance company.   Berryman also attributes fault to his own trial attorneys.   The analysis of this claim under *Trombetta*, 467 U.S. 479, and *Youngblood*, 488 U.S. 51, is the same.   The claim cannot be sustained because the tires released were irrelevant to Berryman's defense.

**10.      Claim that the Chain Link found at the Crime Scene Was Switched by the Criminalist**

This claim is a continuation of the claim that a round gold chain link (or clasp) was withheld from evidence (Claim B.1, *supra*), and in its stead a horseshoe shaped chain link was entered.   In this claim, Berryman specifically assigns blame to the criminalist, because he was the first to note that the crime scene chain link was horseshoe shaped (where as the technical investigator who collected and photographed it described it as round).   The result also is the same.   The Court no longer has possession of the state record so the claim cannot be substantiated.   Alternatively, the presence of a gold-colored clasp at the crime scene is no less incriminating than a gold-colored horseshoe link.   The claim cannot be sustained.

**11.      Presentation of False Evidence Regarding Berryman's Shoes**

This claim realleges Claim B.2, *supra*.   He claims evidence of his shoe prints at the crime scene was presented through use of two separate pairs of shoes.   As before, the Court cannot assess the validity of Berryman's assertions since the state record followed his appeal to the Ninth Circuit.   The claim fails as unsubstantiated.

17

### 12.    Fake Blood Was Planted on Berryman's Right Athletic Shoe

This claim repeats some of Berryman's earlier arguments and contentions about the shoes and adds a few additional facts.  First, he notes that the "fake" blood planted on the right shoe appears to be reddish like the "fake" blood found on the victim's abdomen and arm.  Second, he states that in 2010 another photograph of the actual shoe shows that the blood residue had been wiped clean and covered by light brown make up foundation.  No credible evidence supports these allegations.  Moreover, as noted above, the blood on the shoe, as opposed to the shoelace, was consistent with both Berryman's and Ms. Hildreth's blood, so it was not incriminating.  Further, even the blood from the shoelace, which was said to be not inconsistent with Ms. Hildreth's blood, did not constitute the linchpin of the prosecution case.  The claim fails for both lack of substantiation and lack of prejudice.

### 13.    Presentation of False Evidence of Blood on the Victim

Berryman claims that the prosecutor committed misconduct by telling jurors that a reddish stain on the victim's abdomen looked "somewhat consistent with blood or perhaps dried blood."  The report of the prosecution serologist, however, stated that neither seminal fluid nor blood was detected on the swabs which came from the victim's abdomen.  His testimony before the jury also disclosed this same information.

Berryman focuses on droplets of blood on the victim's right arm that had turned black due to drying.  Superimposed over these dried black droplets, there is a reddish smear that approximates the reddish stain or smear on the victim's abdomen.  Since the prosecution serologist reported and testified he could not detect blood from the swabs of the abdomen stain, Berryman concludes the smear must be planted "fake blood."  And since the smear on the victim's right arm, over the dried black blood droplets, is the same color as the stain on the abdomen, he concludes it is planted fake blood as well.

Because the serologist's testimony that no blood (or semen) was detected from the abdominal smear was before the jury, the prosecutor's opening statement that the reddish stain on the victim's abdomen was somewhat consistent with blood or dried blood, was harmless.  The claim cannot be maintained.

18

**14.     Authorities Planted Shoe Impressions at the Crime Scene**

The contentions relative to this claim require resort to photographic evidence which the Court does not have.  Berryman argues that shoe impressions were planted on top of the technical investigator's evidence ruler.  The Court gathers this means Berryman's shoes were brought to the crime scene after they were seized from him.  There, they were impressed into the dirt adjacent to the investigator's ruler, and photographed.  Berryman discounts the possibility that the impressions already were present at the crime scene when authorities first arrived and that the investigator's ruler was placed next an extant shoe impression to be photographed.

This claim is implausible.  There is no indication from the facts alleged that shoe impression photographs were taken after Berryman was arrested and Ms. Hildreth's body had been removed from the scene.  The claim also is unsubstantiated and, as such, does not suggest the denial of a constitutional right.

**15.     The Rolled Tire Impressions Were Manufactured**

Of the seven tires he received from Sheriff's deputies, the prosecution criminalist testified he observed positive tire track comparisons to photographs of tire tracks from the crime scene in only two of those tires, the limited spare and the right rear tire.  In preparation for Berryman's trial, he made tire roll impressions of those two tires.  Berryman disputes the testimony that the criminalist rolled the right rear tire.  This may follow because thee criminalist additionally testified he could not rule out a positive comparison between the left rear tire and a photograph of impressions at the crime scene. Berryman also has found some contradiction between the trial and preliminary examination hearing testimony.  According the Berryman, at the preliminary examination hearing, the criminalist testified that he noted some consistencies between the left rear tire roll and a crime scene photograph.  Finally, Berryman complains that the criminalist's failure to use a ruler to show measurements of the tires, impressions, and photographs, renders the entire process unreliable.  Apparently some of the substantiation for Berryman's allegations is part of the state record and separate filings are before the Ninth Circuit.

Notwithstanding the lack of substantiation, the mistake of the criminalist in misidentifying the right rear tire for left rear tire, or vice versa, is far from enough to vacate Berryman's conviction.  The

19

fact that the criminalist was confident the limited spare tire had been mounted on the vehicle present at the crime scene and that the other tire the he rolled could not be excluded as having made an impression amply supports the notion that Berryman was present.  This was a circumstantial case, as the prosecutor conceded to the jury during his opening statement.  The totality of the circumstantial evidence supports Berryman's connection to Ms. Hildreth's murder.  The criminalist's testimonial error about whether the second tire which matched impressions at the crime scene was the left rear tire or the right rear tire is not significant.  No substantial showing of a constitutional violation has been made.

### 16.    A Second Crime Scene was created by Manipulation

Berryman claims there actually were two separate crime scenes depicted photographically.   He argues this contention is supported by various discrepancies and omissions in photographs presented at the preliminary examination hearing compared to those presented at trial.   Specifically, at the preliminary examination hearing the technical investigator (who photographed the scene) testified that his marker #1 was on the east side of Ms. Hildreth's body.    At trial, referring to the diagram, the investigator testified his marker #1 was on the west side of the body.  Another indicator of a second crime scene is that some of the investigator's earlier photographs do not show barrier tape around the body and others do.   There also apparently was string used at the crime scene to measure specific items in reference to the body.   During in limine motions, the prosecutor indicated he wouldn't introduce photographs with all the string in them.   None of the photographs, however, depict string. Berryman argues the earlier presented contention that there was a second, but undisclosed, roll of film also supports his theory about the two crime scenes.

The foundation for this claim is speculation that clearly cannot be resolved.   While the Court cannot explain the differences in placement of marker #1 between the preliminary examination hearing and trial, the Court does not rule out that the witness misdescribed placement of the marker at one or the other of the two proceedings.   The presence or absence of barrier tape and string also does not establish the existence of two crime scenes.   It shows only that there were more photographs taken than were introduced at trial.   Further, based on the present showing, there is no way to confirm that the defense did not at some time have access to additional film and/or additional photographs.   The

20

Court finds the possibility that a second crime scene was manufactured beyond remote.  Berryman has not made a substantial showing of a violation of a constitutional right.

**17.     The Criminalist Misrepresented there were Three Rather than Two Chain Links Recovered from Berryman's Pickup**

Berryman argues that trial exhibit 71 is a photograph showing two gold colored chain links on the floor of the cab of his pickup truck.   Trial exhibit 72 is comprised of three actual links.  He claims this exhibit misrepresents the facts, as even the prosecutor believed there were only two links found in the pickup, as he informed the jury during opening argument.  Because the prosecutor knew there were only two links found in the pickup truck cab, Berryman maintains the prosecutor should have moved (or agreed) to suppress the actual links (exhibit 72).

Berryman has not and cannot establish prejudice on account of the introduction three rather than two chain links from his pickup truck.  The claim is without merit.

**18.     The Criminalist Misrepresented the Method Used to Make the Limited Spare Tire Impressions**

At Berryman's trial, the criminalist testified that he rolled both the limited spare tire and the other tire in the same manner, that is, upright.  Berryman now complains it was impossible for the criminalist to have captured an impression of the limited spare side-wall (on which the letters "limited service" were visible) by rolling the tire in the upright position.  The criminalist also testified that he rolled Berryman's shoes in the same manner as the tires, that is, upright.  The shoe impressions are of soles only, no side impressions.

There is no actionable misrepresentation or concealment presented in this claim.  To make an impression of the side-wall of a tire one would have to cause the side-wall to make contact with the medium, however that is accomplished. The fact that there are no side impressions of the other tire or the shoes shows only that the criminalist rolled them in the medium so that only the tread and the soles (respectively) made contact.  Inadequacies in the testimony elicited from the criminalist about the methods he used to create the impressions do not create misconduct.  The claim cannot be sustained.

**19.     Discovery of New Evidence Regarding the Impression of the Limited Spare Tire**

Berryman points out that in 2006 the criminalist recreated the side-wall impression of the limited spare tire from this case on a "Court TV" network.  In doing so he used the same method of rolling the tire, which Berryman describes as upright.  Berryman alleges there are photographs and a DVD of the process.  None of this evidence is before the Court.  However, it would make no difference even if the Court could see it.

Berryman claims that the 2006 demonstration reinforces the misconduct and manipulation of evidence complained of in the previous claim.  The Court having found no cognizable constitutional violation in the previous claim, reinforcement of that claim also does not entitle Berryman to relief.

**20.     Implied Bias of Jurors**

Berryman's implied bias claim extends to Mary Radman, Clara Connelly, Helen Valdez, Virginia Douglas, and David Armendariz.  Ms. Radman is said to have been biased because she was enrolled in a class at Bakersfield College with the prosecutor's investigator and their respective children attended the same soccer camp, where the two engaged in a conversation a few weeks before the trial began. Berryman argues that Ms. Connelly and Ms. Valdez suffered from implied bias because they had been victims of rape.  Ms. Douglas also is alleged to have suffered from implied bias because her sister had been the victim of rape.  Berryman does not explain in this claim why he contends Mr. Armendariz suffered from implied bias, but the Court infers it is because Mr. Armendariz stated he may have been the cousin of a prosecution witness.

Berryman concedes that Ms. Connelly was dismissed from the jury (*see* Claim A.2, *supra*) after she revealed she was acquainted with a prosecution witness and did not deliberate.  Given her dismissal for being acquainted with a prosecution witness, Berryman questions why Ms. Radman, who was acquainted with the prosecution investigator, was not.  He offers no further argument with respect to Ms. Valdez, Ms. Douglas, or Mr. Armendariz.

As noted in Claim A.2, *supra*, Berryman's challenge to Mr. Armendariz was thoroughly addressed in Claim 24 of his federal petition and will not be readdressed here.  The claim as to Ms. Connelly must fail because she did not deliberate.  Any notion she might have discussed the case with her fellow jurors can be dispelled because during the trial proceedings all jurors case were admonished,

22

repeatedly, not to discuss the case until deliberations commenced.  Jurors are presumed to follow court instructions.  *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007).  His challenge to Ms. Radman, especially in contrast to the dismissal of Ms. Connelly, alleges only that Ms. Radman stated she and the prosecution investigator were acquainted and knew each other by sight at a chance soccer camp encounter.  Berryman offers no follow up questions by the trial judge or explanation from Ms. Radman that led to her acceptance as a juror.  This incomplete presentation of the factual background leads to a finding that the claim is not substantiated, especially since the Court does not have access to the state record.

As to the other jurors, Berryman has provided no specifics of what responses he claims give rise to implied bias, nor of how the trial judge handled those responses.  Since the Court is without the record (and the transcripts of jury selection), it cannot independently evaluate the implied bias challenges.  However, the Court remains familiar with the case as a whole and recalls that jury selection was carefully conducted.  From reviewing the July 10, 2007 memorandum decision (doc. 351), the Court also is aware that federally appointed habeas counsel presented several jury selection and retention challenges, including denial of a fair cross section (Claims 20 and 21), improper death qualification (Claim 22), alleged bias as to Mr. Amendariz (Claim 24), and trial error for mishandling examination of jurors impacted by a Berryman family member's outburst (Claims 73 and 74).

The claim is denied as unsubstantiated and without merit.

### 21.      Ineffective Assistance of Trial Counsel for Failure to Prepare Expert Witness

In this claim, Berryman's complaints fall into two categories.  The first relates to the testimony of the defense criminalist about tire, shoe, and chain link impressions.  The second relates to failure of the defense to test blood stains on Berryman's right shoe.  With respect to both categories, Berryman claims his trial attorneys failed (or refused) to allow the defense criminalist to examine and test the above described evidence.

In the July 10, 2007 memorandum decision (doc. 351) the Court noted the prosecution serologist testified (on September 27, 1988) that blood samples on the shoelace and shoe were used up during testing and there was nothing left to turn over to the defense for further testing.  Because there was so little blood to test in the first place, the defense criminalist referred Berryman's trial attorneys to a

23

separate DNA expert in Northern California who had more advanced testing techniques.   In early October, 1988, defense counsel represented to the trial court he had sent a sample of blood stain evidence from the shoe to this DNA expert and that testimony from this expert could be anticipated if Ms. Hildreth's blood could be eliminated as the source of the shoe blood stain evidence.   The DNA expert did not testify, meaning either he didn't have a sufficient quantity to test, or if he did, he could not eliminate Ms. Hildreth as the source of that blood.   In either case, there was never an issue with the defense criminalist not having access to the shoe blood evidence.

As to the other evidence, ineffective assistance of counsel because the defense criminalist did not examine any of the items prior to his testimony already has been resolved against Berryman in Claim 30 of his federal petition for lack of prejudice (doc. 351).   That analysis will not be revisited or reiterated here.   Even if as petitioner can establish incompetent representation, under *Strickland v. Washington*, 466 U.S. 688 (1984), he or she must also establish prejudice.

This claim is both legally and factually unsubstantiated.

**22.    Ineffective Assistance of Trial Counsel for Failure to Prevent Release of Pickup Truck Tires**

This claim realleges the facts set forth in Claim A.10, *supra*, only instead of proceeding under a failure to preserve evidence theory, he claims ineffective assistance of counsel.   As with Claim B.21, *supra*, this claim suffers from a lack of prejudice.

During a pretrial motion on March 3, 1988, Berryman's lead attorney opposed the motion of the finance company for release of the pickup truck because he (the attorney) considered the vehicle "a very vital piece of evidence to the case."   After being invited but failing to offer a more specific basis for retaining the truck any longer, the trial court ordered the truck, including five tires not seized by the prosecution, to be released to the finance company.   Even if Berryman's trial attorney's performance had been constitutionally incompetent, the claim does not make out a constitutional violation.

Only two tires connected with Berryman's truck were incriminating, and those two tires were preserved.   The five tires released to the finance company neither incriminated nor exculpated Berryman.   They were neutral, with no evidentiary value to Berryman.   The claim is without merit.

24

**23.** **Ineffective Assistance of Trial Counsel for Failure to Question Technical Investigators about Job Status with Kern County**

Similar to the preceding claim, this claim converts a prosecutorial misconduct claim (Claim A.5, *supra*) into an ineffective assistance of counsel claim.  Berryman argues that his trial attorneys should have conducted voir dire as to the two former Kern County Sheriff's Department technical investigators who worked on his case as to the reasons they no longer were employed by the Department.  He makes no showing that the respective reasons for their separation from the Department would have been helpful to the defense (as impeachment).  Concomitantly, he offers no reason this trial attorneys should have suspected investigators' respective separations from service would have been helpful to the defense.  The claim is unsupported and unsubstantiated.

**24.** **Ineffective Assistance of Trial Counsel for Failure to Excuse Ms. Radman from Jury Service**

This claim repeats the allegations of Claim B.20, *supra*, except it is focused only on Ms. Radman.  The absence of a full rendition of the facts (since the Court does not have possession of the state record) together with the Court's general familiarity with the case and the presentation of several jury issues in the federal petition lead the Court to find the claim to be unsubstantiated and without merits.

**V.**   **Order**

Berryman's pro se request for a certificate of appealability, as to all the claims described in his July 22, 2013 filing, is denied.  This Court will entertain no pro se further filings from Berryman.  Any future submissions will be returned.  Jurisdiction over Berryman's appeal from this Court's July 10, 2007, January 15, 2010, and January 22, 2010 orders (docs. 351, 414, and 418, respectively) is with the Ninth Circuit Court of Appeals.

IT IS SO ORDERED.

Dated: <u>August 27, 2013</u>

<u>/s/ Anthony W. Ishii</u>
Anthony W. Ishii
United States District Judge
